## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

JAMES MUELLER,           )
                          )
          Petitioner,     )
                          )
   v.                 )       No. 4:17CV971 RLW
                          )
BILL STANGE,          )
                          )
          Respondent.[1]   )

## MEMORANDUM AND ORDER

This matter is before the Court on James Mueller's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody. (ECF No. 1) Because this Court has determined that Petitioner's claims are inadequate on their face and the record affirmatively refutes the factual assertions upon which his claims are based, this Court decides this matter without an evidentiary hearing.[2]

## PROCEDURAL BACKGROUND

Petitioner James Mueller is currently incarcerated at the Potosi Correctional Center pursuant to the judgment and sentence of the Circuit Court of Cape Girardeau County, Missouri.

---

[1] Bill Stange is now the warden of Potosi Correctional Center, where Petitioner is housed. Under Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts, "the petition must name as respondent the state officer who has custody." Therefore, Bill Stange's name will be substituted as the named Respondent in this action.

[2] The Eighth Circuit has held that a district court may dismiss a movant's motion without an evidentiary hearing if "(1) the movant's allegations, accepted as true, would not entitle the movant to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Buster v. United States*, 447 F.3d 1130, 1132 (8th Cir. 2006) (internal quotation marks omitted) (quoting *Sanders v. United States*, 341 F.3d 720, 722 (8th Cir. 2003)); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (holding that "[a] petitioner [in a § 2254 case] is not entitled to an evidentiary hearing . . . when his claims are . . . contentions that in the face of the record are wholly incredible") (internal quotation marks omitted).

A jury found him guilty of two counts of forcible rape, two counts of forcible sodomy, one count of attempted forcible sodomy, and five counts of armed criminal action. The circuit court sentenced Petitioner to 10 years for each armed criminal action count and 25 years for each of the other five counts, which were set to run consecutively for a total of 175 years' imprisonment. He appealed the judgment to the Missouri Court of Appeals, which affirmed the judgment and conviction on March 22, 2011 in an unpublished memorandum opinion. (Ex. E, ECF No. 9-5) Petitioner then filed a Motion to Vacate, Set Aside, or Correct Judgment or Sentence pursuant to Missouri Supreme Court Rule 29.15, which was denied following an evidentiary hearing. On February 9, 2016, the Missouri Court of Appeals affirmed the judgment of the motion court in an unpublished memorandum opinion. (Ex. J, ECF No. 9-10)

On March 16, 2017, Mueller filed the instant petition for habeas relief in federal court. (ECF No. 1) Respondent filed a response in opposition (ECF No. 9) and counsel for Plaintiff filed a traverse in support (ECF No. 14).[3]

## FACTUAL BACKGROUND[4]

Petitioner's convictions stemmed from an encounter between him and Victim on August 16, 2008. The evidence at trial established the following facts:

Victim ended a relationship with her girlfriend, and moved out of their shared apartment. Victim moved in with a friend, Thea Marie Snider, who lived in the same apartment complex. On August 16, 2008, while Snider and Victim were in their apartment, Petitioner, who already

---

[3] The Court notes that Petitioner's 34-page traverse exceeds the 15-page limit set by Local Rule 4.01(D). The Court will not penalize Petitioner for his counsel's failure to comply with this district's local rules and considered the traverse in its entirety. Nevertheless, **Petitioner's counsel is advised to consult the applicable local rules before making any future filings in this or any other federal court.**

[4] The Court sets forth the facts as stated in the Missouri Court of Appeals' memorandum opinion affirming the motion court's denial of post-conviction relief. (Ex. J, ECF No. 9-10)

knew Snider, came into the room and introduced himself to Victim. Victim testified that Snider and Petitioner were kissing. Shortly thereafter, Petitioner used a marker to draw a symbol on Snider's arm. After marking on Snider's arm, Petitioner also drew a symbol on Victim's neck. Petitioner explained that the symbol meant Victim "belonged" to Petitioner and that Petitioner had Victim's back.[5] Victim testified that she was uncomfortable with Petitioner marking on her neck, but that she did not want to be rude to Snider because Snider was allowing Victim to stay in the apartment rent-free. Victim testified on cross-examination that these actions were not mutual flirtation between her and Petitioner. Before Petitioner left the apartment, Snider agreed to temporarily store a few of Petitioner's belongings in her apartment.

At some point later, Victim was talking with other friends outside the apartment building. Petitioner approached Victim and started flirting. Petitioner tried to kiss Victim but Victim pushed him away. After the attempted kiss, Victim testified that she began to worry for her safety. Victim's friend, George Anderson, also lived in the apartment complex. Victim and Anderson went to Anderson's apartment.

Around 3:00 p.m., Snider needed to leave the apartment complex. Snider found Victim and gave Victim a key with instructions to watch the apartment. Snider explained that she did not want Petitioner to steal anything from the apartment. Victim then went to another room in the apartment complex to visit with friends. Roughly an hour later, Petitioner found Victim in Anderson's apartment. Petitioner asked Victim to let him into Snider's apartment to retrieve his belongings. Petitioner and Victim went back to Snider's apartment. With Petitioner still in the apartment, Victim went into the bathroom to take a shower. Victim closed the bathroom door but did not lock it. Trial Counsel cross-examined Victim about why she took a shower while

---

[5] Victim also referred to the symbol as belonging to a gang.

Petitioner remained in the apartment. Victim testified that she "didn't think anything of it" because she "thought he was leaving." Victim also testified that she had been wearing her clothes for multiple days without a shower.

While Victim was adjusting the temperature in the shower, she heard Petitioner open the bathroom door. Petitioner held a box-cutter knife to Victim's neck and demanded that Victim lay down in the bathtub. Petitioner positioned himself between Victim's legs. Victim testified that she was afraid for her life. According to Victim's testimony, Petitioner first performed oral sex with his tongue on Victim's vagina. After performing the oral sex, Petitioner dropped the knife onto the floor next to the bathtub. Next, Petitioner allegedly put his penis in Victim's mouth while calling her a "b----." Victim testified that Petitioner then instructed Victim to get on her hands and knees. From behind Victim, Petitioner allegedly inserted his penis in Victim's vagina. Victim testified that Petitioner next attempted to insert his penis into Victim's anus. Victim testified that this hurt, so she kicked Petitioner and Petitioner stopped his attempt at anal intercourse. Instead, Petitioner allegedly reinserted his penis into Victim's vagina.

During this final act of vaginal intercourse, someone knocked at the front door to the apartment. Petitioner yelled at the stranger to leave. After he ejaculated, Petitioner told Victim that he would hunt her down and kill her if Victim told anyone. As Victim was getting out of the bathtub, the knocking resumed and Petitioner decided to answer the door. Victim escaped the apartment through the front door by ducking under Petitioner's arm. Victim told her friends about the incident, and the apartment manager eventually called the police.

The police apprehended Petitioner while investigating the matter at the apartment complex. Police found a knife matching Victim's description inside Petitioner's bag. Police

read Petitioner his *Miranda*[6] rights and interrogated him. The investigating officer testified that Petitioner "stated that he was in the shower with [Victim] and that he just kissed her and did not have sex with her because she looked too much like a boy." Petitioner later denied having sex with Victim again. Victim went to the hospital and submitted a rape kit. A DNA test confirmed that Petitioner's sperm was present in Victim's vagina.

## LEGAL STANDARD

Under the Anti-Terrorism and Effective Death Penalty Act (AEDPA), federal courts review state court decisions under a deferential standard. *Owens v. Dormire*, 198 F.3d 679, 681 (8th Cir. 1999). "[A] district court shall entertain an application for a writ of habeas corpus . . . only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Further, a federal court may not grant habeas relief unless the claim adjudicated on the merits in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *Owens*, 198 F.3d at 681 (quoting 28 U.S.C. § 2254(d)(1)). Findings of fact made by a state court are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). *See also Gee v. Groose*, 110 F.3d 1346, 1351 (8th Cir. 1997) (state court factual findings presumed to be correct where fairly supported by the record).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000). With

---

[6] *Miranda v. Arizona*, 384 U.S. 436 (1966).

regard to the "unreasonable application" clause, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *see also Bucklew v. Luebbers*, 436 F.3d 1010, 1016 (8th Cir. 2006); *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006). In other words, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Williams*, 529 U.S. at 411.

To preserve a claim for federal habeas review, a petitioner must present the claim to the state court and allow that court the opportunity to address petitioner's claim. *Moore-El v. Luebbers*, 446 F.3d 890, 896 (8th Cir. 2006). "Where a petitioner fails to follow applicable state procedural rules, any claims not properly raised before the state court are procedurally defaulted." *Id.* A federal court will consider a defaulted habeas claim "only where the petitioner can establish either cause for the default and actual prejudice, or that the default will result in a fundamental miscarriage of justice." *Id.*

## **DISCUSSION**

Petitioner specifically identifies nine grounds for this federal habeas petition. Respondent argues each claim is either procedurally barred, meritless, or both. Petitioner's habeas counsel offers further arguments regarding the fifth, seventh, eighth, and ninth grounds, which are based on alleged ineffective assistance of trial counsel.[7]

---

[7] Petitioner's habeas counsel also offers the following commentary on the evidence presented at trial:

> After interviewing petitioner at the Perryville Police Department, Detective Direk Hunt responded to the scene of the crime to take photos of the bathroom. Oddly,

# I. Ground One

Petitioner's first ground for habeas relief claims the trial court plainly erred in overruling his motion to dismiss one of the forcible rape counts and its related armed criminal action count and thereby violated his rights under the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution. He argues that "a significant amount of time didn't pass" for the intervening attempted sodomy between the two separately charged acts of vaginal penetration. (Pet., ECF No. 1 at 5) Accordingly, Petitioner argues he was charged and convicted of the same conduct twice because both forcible rape counts "were based upon a single, continuing course of *uninterrupted* conduct." (*Id.*) (emphasis added)

Petitioner raised this claim on direct appeal and the Missouri Court of Appeals held:

---

although the shower was the scene of an alleged rape that lasted "about an hour," there were multiple items still balanced on the ledge of the shower and the only things in the bottom of the tub were a loofah with a handle and a washcloth.

Alicia Moore, a registered nurse at Jefferson Regional Medical Center, testified that after a medical evaluation, [Victim] showed no signs of abrasions, burns, bruises, redness, forcible tears, swelling, lacerations, pain, puncture wounds, tenderness, contusions, or a rash. [Victim] indicated that petitioner "bit her" on her neck during the incident, however there were no signs that she had been bitten.

Dr. Jon Bird was physician [sic] who examined [Victim]. He testified that he found no general physical exam findings. Dr. Bird testified that [Victim] had no bite marks and showed no signs of trauma or abnormalities of any kind. Dr. Bird reported that [Victim] had some blood in her vaginal area. However, [Victim] indicated to Detective Hunt that her menstrual period had just recently ended, and it may have just been residual blood.

(Pet'r's Traverse, ECF No. 14 at 7-8) (citations to transcript omitted) The Court notes that Petitioner's arguments post-trial have not been based on the sufficiency of the evidence. Furthermore, the Court rejects Petitioner's habeas counsel's suggestion that the offenses for which Petitioner was charged and convicted did not actually occur because the scene was not in total disarray. Sexual violence does not have a universal script. It was not unreasonable for the jury to find that the scene of multiple acts of sexual violence would appear as it did here, especially when the offenses were accomplished with the threat of further violence by means of a box cutter.

The record in this case supports [Petitioner's] conviction of two counts of forcible rape. The episode supporting the first count of rape began when [Petitioner] inserted his penis into Victim's vagina the first time and ended when he attempted to insert his penis into her anus. The episode supporting the second count began when [Petitioner] inserted his penis back into Victim's vagina. During the time in which [Petitioner] attempted to sodomize Victim and in response received a kick from Victim, he had time to form intent to commit a second act of rape. *Although the proximity in time and place of the two offenses makes the lower court's decision a closer call, given the deferential standard of review, this Court cannot say that [Petitioner's] conviction of both counts constitutes plain error.*

(Ex. E, ECF No. 9-5 at 3) (emphasis added)

The Court concludes the opinion by the Missouri Court of Appeals is neither contrary to nor involves an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States. *See Owens*, 198 F.3d at 681. As the Missouri Court of Appeals further explained in affirming Petitioner's convictions,

Missouri follows the separate or several offenses rule to determine whether a double jeopardy violation has occurred. *State v. Childs*, 684 S.W.2d 508, 510-11 (Mo. App. E.D. 1984). Under this rule, a defendant may commit several offenses in the course of the same general transaction. *Id.* In regards to rape, "[g]enerally rape is not a continuing offense, but each act of intercourse constitutes a distinct and separate offense." *Id.* (internal citations omitted). There are several factors courts consider when determining whether a fact pattern supports multiple counts of rape, including the time and place of commission of the offenses. *Id. But the most important factor is the defendant's intent as manifested by his conduct and utterances. Id.*

(Ex. E, ECF No. 9-5 at 4-5) (emphasis added) The Court finds that precedent supports the Missouri Court of Appeals' opinion affirming Petitioner's convictions. "Sexual assault under Missouri law is not inherently a continuous crime, as *any* penetration, however brief, suffices to meet the definition." *Loeblein v. Dormire*, 229 F.3d 724, 728 (8th Cir. 2000). Here, the two separate instances of forcible rape were separated by a distinct act of attempted sodomy and physical resistance by Victim in the form of a kick. As the Missouri Court of Appeals noted,

Petitioner "had time to form intent to commit a second act of rape." (Ex. E, ECF No. 9-5 at 3) Consequently, the Court denies Petitioner's first ground for habeas relief.

## II. Ground Two

Petitioner's second ground for habeas relief claims the trial court plainly erred in not *sua sponte* declaring a mistrial once the prosecutor "told the jury they would have [to] believe that all the police officers were lying to acquit [Petitioner]." (Pet., ECF No. 1 at 6) He argues the comments, which were made during closing arguments, were "patently improper" as they "constituted impermissible bolstering of the police officers' credibility." (*Id.*)

> Petitioner raised this claim on direct appeal and the Missouri Court of Appeals held:

> Counsel is permitted wide latitude in closing arguments to comment on . . . witnesses' credibility. *State v. Bryant*, 741 S.W.2d 797, 799 (Mo. App. E.D. 1987). When discussing a police officer's testimony, a prosecutor may state that to acquit a defendant the jury would have to believe that the officer had perjured himself. *Id.* Such statements are permissible comments on credibility. *Id.* The prosecutor in this case did nothing more than comment on witnesses['] credibility. Such discussion was permissible and therefore the trial court did not error [sic], plainly or otherwise, in allowing it.

(Ex. E, ECF No. 9-5 at 6)

This conclusion is neither contrary to nor involves an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States. *See Owens*, 198 F.3d at 681. Further, it follows Missouri precedent. "Rarely is plain error relief granted for a closing argument claim, absent an objection, because it may be a strategic decision by counsel. The trial court is vested with discretion regarding closing arguments. The entire record is considered when interpreting a closing argument, not an isolated segment." *State v. Taylor*, 298 S.W.3d 482, 510 (Mo. 2009) (en banc). Here, the Missouri Court of Appeals considered the entirety of the record and reasonably concluded the prosecutor's comments on the police

officers' testimony were not improper or prejudicial to warrant the trial court *sua sponte* declaring a mistrial. The Court denies his second ground for habeas relief.

### III. Ground Three

Petitioner's third ground for habeas relief is similar to his second ground and claims the trial court plainly erred in not *sua sponte* declaring a mistrial after the prosecutor, again during closing argument, said "I suggest to you that everyone who testified on behalf of the State of Missouri told the truth, even when that truth was embarrassing." (Pet., ECF No. 1 at 6) The Missouri Court of Appeals rejected this argument using the same analysis that it used to reject Petitioner's claim regarding the Prosecutor's comments on police testimony. (Ex. E, ECF No. 9-5 at 6) Based on the Court's analysis above, the conclusion of Missouri Court of Appeals is reasonable. Consequently, the Court denies Petitioner's third ground for habeas relief.

### IV. Ground Four

Petitioner's fourth ground for habeas relief claims his trial counsel was ineffective by failing to present testimony from two witnesses, Snider and Anderson, after trial counsel promised to do so in opening statements.

To support an ineffective assistance of counsel claim, a convicted movant must first show "that his counsel's performance was deficient, and that he suffered prejudice as a result." *Paul v. United States*, 534 F.3d 832, 836 (8th Cir. 2008) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). The movant must also establish prejudice by showing "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Malcom v. Houston*, 518 F.3d 624, 626 (8th Cir. 2008). A reasonable probability is less than "more likely than not," *Kyles v. Whitley*, 514 U.S. 419, 434 (1995), but more than a possibility, *White v. Roper*, 416 F.3d 728, 732 (8th Cir. 2005).

A reasonable probability "is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "The applicable law here is well-established: post-conviction relief will not be granted on a claim of ineffective assistance of trial counsel unless the petitioner can show not only that counsel's performance was deficient but also that such deficient performance prejudiced his defense." *Saunders v. United States*, 236 F.3d 950, 952 (8th Cir. 2001) (citing *Strickland*, 466 U.S. at 687).

"Judicial scrutiny of counsel's performance is highly deferential, indulging a strong presumption that counsel's conduct falls within the wide range of reasonable professional judgment." *Bucklew*, 436 F.3d at 1016 (citing *Strickland*, 466 U.S. at 689). The prejudice prong requires Petitioner to prove that but for counsel's deficiency, the outcome of his trial would have been different absent counsel's error. *Id.* (citing *Strickland*, 466 U.S. at 694). In other words, Petitioner must demonstrate "that counsel's errors were so serious that they rendered the proceedings fundamentally unfair or the result unreliable." *Bucklew*, 436 F.3d at 1016. The question of whether counsel's performance prejudiced the trial need not be addressed if counsel's performance was not deficient; conversely, a court need not reach the question of deficient performance where a petitioner has failed to show prejudice. *Green v. Steele*, No. 4:04-CV-0610 CEJ TCM, 2007 WL 2199644, at *10 (E.D. Mo. July 27, 2007), *magistrate judge's report and recommendation adopted in* 2007 WL 2360089, at *1 (E.D. Mo. Aug. 14, 2007).

Petitioner raised this claim in his motion seeking post-conviction relief under Rule 29.15. In affirming the motion court's denial of relief, the Missouri Court of Appeals noted:

> Generally, to succeed on an ineffective assistance of counsel claim based on counsel's failure to call a witness, the movant must show: (1) that trial counsel knew or should have known of the witness's existence; (2) that the witness could be located through reasonable investigation; (3) that the witness would testify; and (4) that the witness's testimony would have produced a viable defense. *Worthington v. State*, 166 S.W.3d 566, 577 (Mo. banc 2005). We presume trial

counsel's decision not to call a witness is a matter of trial strategy, and a movant must clearly show otherwise to demonstrate ineffective assistance of counsel. *State v. Clay*, 975 S.W.2d 121, 143 (Mo. banc 1998).

However, trial counsel's promise to present certain evidence during opening statement, and subsequent failure to do so opens trial counsel to criticism from the defendant. *Midgyett v. State*, 392 S.W.3d 8, 13 (Mo. App. W.D. 2012). When determining whether an unfulfilled evidentiary promise by defense counsel could contribute to a finding of ineffectiveness, courts consider whether "unforeseeable events" occurring during the trial that would justify counsel's change in trial strategy. *Id.* (citing *Francis v. State*, 183 S.W.3d 288, 303 (Mo. App. W.D. 2005)).

(Ex. J, ECF No. 9-10 at 12) The Missouri Court of Appeals then separately analyzed Petitioner's claim with regard to Snider and Anderson.

### A. Failure to present Snider's testimony

Petitioner argues Snider would have testified that Petitioner and Victim were friendly with each other before Victim claimed Petitioner assaulted her.

The Missouri Court of Appeals explained that Petitioner's trial counsel made a change in trial strategy to not call Snider as a witness despite promising to do so in opening statements "after Snider was unexpectedly uncooperative at trial and appeared to be 'under the influence' of some substance." (*Id.* at 13)

Trial Counsel testified that an investigator had interviewed Snider before trial. During opening statements, Trial Counsel promised Snider would testify that [Petitioner] and Victim appeared friendly with each other before the alleged crimes. When Trial Counsel spoke with Snider after opening statements, Snider was not willing to repeat her previous statements. Trial Counsel also had concerns that Snider might be under the influence on the day of trial because she appeared "really agitated." The motion court found Trial Counsel's testimony credible, noting:

> The testimony of some potential witnesses for [Petitioner] significantly changed when interviewed by [Petitioner's] trial counsel just prior to being called to testify from what they had originally told [Petitioner's] counsel. His counsel thought one or more potential witnesses might have been under the influence when interviewed the day of trial.

Trial Counsel's change in strategy not to call Snider as a witness at trial was not due to Trial Counsel's inadvertence. Instead, Trial Counsel fully intended to call Snider during opening statements, but later made the "executive decision" to leave Snider off the witness list to avoid having her "detonate on the stand." While it is unclear whether Trial Counsel discussed the change in strategy with [Petitioner], not calling Snider to testify was clearly a considered and strategic decision.

(*Id.* at 13-14)

The Court concludes that the decision by Missouri Court of Appeals regarding Petitioner's trial counsel's decision to not have Snider testify is reasonable. Based on the record, including Petitioner's trial counsel's testimony at the evidentiary hearing before the motion court, it was a reasonable trial strategy to reconsider calling Snider as a witness in light of her sudden unreliability pre-trial.

## B.  Failure to present Anderson's testimony

During opening statements, Petitioner's trial counsel told the jury Anderson would testify that Victim told him that Petitioner bit her genitalia during the sexual encounter and that medical personnel closed the bite wound with stitches. According to Petitioner, this testimony would have impeached Victim's credibility because a subsequent inspection found no such lacerations.

The Missouri Court of Appeals conceded Petitioner's trial counsel's decision not to call Anderson "is more difficult to justify" and noted the decision might have been due to inadvertence rather than a clearly considered trial strategy. (*Id.* at 14) Specifically, "Trial Counsel anticipated the State would call Anderson and thus relied on the State's subpoena. When the State released Anderson from his subpoena Anderson was not available to testify because defense counsel had taken no steps to procure his attendance at trial." (*Id.*) Nevertheless, the Missouri Court of Appeals found Petitioner failed to satisfy the prejudice prong under *Strickland* even assuming he could establish the performance prong.

- 13 -

Given the facts before us, we reject any suggestion that Trial Counsel's performance as it relates to Anderson was sufficiently egregious and prejudicial to establish *Strickland* prejudice. Although Anderson's testimony was not directly relevant to the primary issue of consent, we acknowledge that Anderson's testimony that Victim exaggerated her injuries could have served to impeach Victim's credibility, suggesting that Victim lied to Anderson about the extent of her injuries and similarly lied about the rest of her story. Admittedly, Victim's testimony—and thus, her credibility—was important to the State's case because Victim was the only witness to testify directly about the sexual encounter.

However, additional evidence adduced by the State at trial corroborated Victim's testimony and supported a finding that the sexual encounter was not consensual. The motion court found that Anderson's testimony "would have been of little benefit to movant, especially in light of such strong evidence of guilt." Independent of Victim's testimony, the State's evidence showed [Petitioner] admitted to police investigators that he showered with Victim.[8] [*Petitioner*] *denied multiple times that sexual contact occurred and never attempted to justify his conduct as consensual sexual contact.* Moreover, DNA evidence of [Petitioner's] semen found inside Victim's vagina directly refuted [Petitioner's] version of events and corroborated Victim's testimony. Trial Counsel's failure to present Anderson's testimony, to the extent it may have impeached Victim's credibility, was not sufficiently egregious and prejudicial to undermine the verdict because the State's additional evidence strongly corroborated Victim's version of events and refuted [Petitioner's] version. When considering [Petitioner's] claims in the context of the entire evidence presented at trial, we are not left with a definite and firm impression that Anderson's testimony had a reasonable probability of changing the outcome of [Petitioner's] trial.

(*Id.* at 16-17) (emphasis added)

The Court holds that the opinion of the Missouri Court of Appeals is not contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Nor was the determination by the Missouri Court of Appeals based on an unreasonable determination of the facts in light of the evidence. Petitioner's defense at trial was that he did not have sexual intercourse with Victim. Anderson's testimony would not have directly supported Petitioner's theory. The extent to which

---

[8] Petitioner did not testify at trial. This evidence was elicited through the testimony of police officers at trial.

Anderson's testimony would have impeached Victim's credibility does not sufficiently outweigh the totality of the record, including DNA evidence introduced at trial, to establish prejudice and justify habeas relief.

### C. Trial counsel's failure to move for a new trial

In addition to the claims regarding Snider's and Anderson's testimonies, Petitioner's fourth ground for habeas relief also claims his trial counsel was ineffective for failing to move for a new trial based on the double jeopardy argument analyzed above. Essentially, Petitioner is arguing that, but for his trial counsel's failure to preserve the double-jeopardy objection, the Missouri Court of Appeals would have reviewed the issue *de novo* on direct appeal and would have ruled in his favor.

The Missouri Court of Appeals rejected this argument.

It is well established that [trial counsel's] failure to preserve an issue for appeal is not a cognizable ground for granting post-conviction relief based on ineffective assistance of counsel. *McLaughlin v. State*, 378 S.W.3d 328, 354 (Mo. banc 2012); *Dickerson v. State*, 269 S.W.3d 889, 893 n.3 (Mo. banc 2008); *State v. Thompson*, 955 S.W.2d 828, 831 (Mo. App. W.D. 1997). To state a cognizable claim of ineffective assistance under Rule 29.15, a movant must allege that trial counsel's ineffectiveness deprived him of a *fair trial*. *McLaughlin*, 378 S.W.3d at 355.

(*Id.* at 18) The Court agrees. Petitioner's argument that his trial counsel's failure to move for a new trial impacted his appeal is simply not cognizable under Rule 29.15. Therefore, the opinion by Missouri Court of Appeals is reasonable and Petitioner is not entitled to habeas relief.

Based on this analysis, the Court denies his fourth ground for habeas relief.

### V. Ground Five

Petitioner's fifth ground for habeas relief claims his trial counsel was ineffective for failing to withdraw as counsel because her prior representation of a material witness, Lindsey Christisen, created a conflict of interest. Petitioner concedes this claim is procedurally barred

because it was not raised in his Rule 29.15 motion. However, he contends he can show cause and prejudice for the default under *Martinez v. Ryan*, 566 U.S. 1 (2011), due to post-conviction counsel's failure to advance these claims in Petitioner's Rule 29. 15 motion.

In *Martinez*, the Supreme Court of the United States held that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id.* at 9. When, as in Missouri,

> a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances. The first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial. The second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

*Id.* at 14. In addition, to overcome the procedural default, "a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Id.* In other words, to overcome Petitioner's procedural default, Petitioner must establish that counsel on collateral review was ineffective under *Strickland* and that the ineffective assistance of trial counsel claim is meritorious.

Here, the Court finds that Petitioner is unable to demonstrate cause sufficient to overcome the default in his fifth ground. As stated above, to establish ineffective assistance of counsel, Petitioner must demonstrate that counsel's performance was "deficient" and that such deficient performance "prejudiced" his defense. *Strickland*, 466 U.S. at 687. "Judicial scrutiny of counsel's performance is highly deferential, indulging a strong presumption that counsel's conduct falls within the wide range of reasonable professional judgment." *Bucklew*, 436 F.3d at 1016 (citing *Strickland*, 466 U.S. at 689). Petitioner has not established that his counsel on

collateral review was ineffective under *Strickland* or that this underlying assertion that his trial counsel was ineffective is meritorious. Beyond asserting a conflict existed that should have disqualified Petitioner's trial counsel from representing him, Petitioner fails to engage in any analysis supporting the argument that a conflict of interest existed. Petitioner relies on his trial counsel's internal case memos in which she indicated the possibility of a conflict due to her prior representation of Christisen, as well as two unnamed potential witnesses, and her efforts to bring the issue to the attention of others involved in the case. (Ex. 4, ECF No. 15-4) Petitioner, however, does not cite to any relevant authority, such as any provision in the Supreme Court of Missouri's Rules of Professional Conduct concerning duties to former clients, and the Court will not make the argument for him.

Additionally, Plaintiff has failed to show he was prejudiced by his trial counsel's representation because none of his claims would have supported his defense. Rather, as the Court of Appeals explained, his claims related to possible attacks on Victim's credibility do not outweigh the other evidence presented at trial. The Court denies his fifth ground for habeas relief.

## VI. Ground Six

Petitioner's sixth ground for habeas relief claims his trial counsel was ineffective in failing to raise a double jeopardy objection for the separate forcible rape charges and accompanying armed criminal action charges. This ground is identical to the final aspect of Petitioner's fourth ground and substantively similar to his first ground. Based on the analysis above, the Court denies the sixth ground for the same reasons as the first and fourth grounds.

## VII.    Ground Seven

Petitioner's seventh ground for habeas relief claims his trial counsel was ineffective in failing to investigate, interview, and call Christisen, Andrea Klein, and several unnamed others as witnesses. This claim was not raised in his Rule 19.15 motion. Therefore, under *Martinez*, Petitioner must establish that counsel on collateral review was ineffective under *Strickland* and that the ineffective assistance of trial counsel claim is meritorious in order to overcome his procedural default by not raising this in his Rule 29.15 motion. *See* 566 U.S. at 14.

Petitioner's counsel in the instant habeas proceeding has provided sworn affidavits from both Christisen (Ex. 1, ECF No. 15-1) and Kline (Ex. 2, ECF No. 15-2). Both affidavits were signed in September 2017. While neither Christisen nor Kline were present when the charged offenses occurred, both claim Victim told them separately afterwards that she fabricated the allegations against Petitioner.

The Court finds Petitioner has failed to show prejudice under *Strickland*. Assuming Christisen's and Kline's testimonies at trial would have been consisted with these statements attested to in 2017, both witnesses undoubtedly could have been used to impeach Victim's credibility. Specifically, Kline attests "[Victim] has a tendency to lie and has a reputation in the community for being untruthful." (Ex. 2, ECF No. 15-2 ¶ 6) *See* Fed. R. Evid. 608(a) ("A witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that character."). Petitioner, however, has not shown by a reasonable probability that the possibility of such impeachment would have resulted in the jury acquitting him of the charged offenses. The Court believes that, had Petitioner raised this claim related to Christisen and Kline in his Rule 19.15 motion, the motion court and Missouri Court of Appeals would have

reached the same conclusions they reached as to Snider and Anderson. Petitioner's trial counsel failure to present testimony, "to the extent it may have impeached Victim's credibility, was not sufficiently egregious and prejudicial to undermine the verdict because the State's additional evidence strongly corroborated Victim's version of events and refuted [Petitioner's] version." (Ex. J, ECF No. 9-10 at 17) In light of all the evidence presented at trial, including DNA evidence that refuted Petitioner's defense that no sexual activity occurred, the Court is "not left with a definite and firm impression" that testimony from Anderson, Snider, Christisen, or Kline "had a reasonable probability of changing the outcome of [Petitioner's] trial." (*See id.*) Consequently, the Court denies his seventh ground for habeas relief.

## VIII.   Ground Eight

Petitioner's eighth ground for habeas relief claims his trial counsel was ineffective in failing to investigate Victim's "extensive history of mental illness, even though [Victim's] mental health records were provided to the defense after counsel filed a motion to compel." (Pet., ECF No. 1 at 16) Petitioner raised the issue in his Rule 19.15 motion but did not appeal the motion court's denial of relief on that basis. Therefore, he procedurally defaulted on this claim. Accordingly, Petitioner must establish that counsel on collateral review was ineffective under *Strickland* and that the ineffective assistance of trial counsel claim is meritorious in order to overcome his procedural default by not raising this in his Rule 29.15 motion. *See Martinez*, 566 U.S. at 14.

As an initial matter, Petitioner concedes his trial counsel had obtained Victim's mental health records after filing a motion to compel. Taking such action, and ultimately succeeding, is hardly evidence of deficient performance necessary to satisfy *Strickland*. Further, as with the other purported evidence Petitioner argues should have been presented at trial, Petitioner argues

the records could have been used to impeach Victim's credibility and not to actually prove his innocence.

In fact, the Court's review of the mental health records seems to suggest they could have been used to help *bolster* Victim's credibility rather than impeach it. The medial records Petitioner presents include a Psychiatric Evaluation form dated June 2, 2008, from the Community Counseling Center in Perryville, Missouri. (Ex. C, ECF No. 15-3 at 1-2) That form notes Victim's previous hospitalizations for depression and suicidal ideation and her history of substance abuse. (*Id.*) The evaluating psychiatrist diagnosed Victim with, among other conditions, Bipolar Disorder and Borderline Personality Disorder-Severe. (*Id.*) Petitioner also presents a form from the same facility dated January 26, 2009. (*Id.* at 3-10) Among other things, the clinical therapist who prepared that form detailed Victim's extensive history of sexual abuse. Significantly, the clinical therapist included two references to events that seem to relate to this case and the events of August 16, 2008. On the seventh page, the clinical therapist noted: "[Victim] was raped in the fall of 2008 and said, 'I haven't dealt with it except with law enforcement'. The trial is still on going." (*Id.* at 8) On the next page, under the section listing Victim's relevant classifications as found in the Diagnostic and Statistical Manual of Mental Disorders, 4th Edition, Text Revision (also known as DSM-IV-TR), the clinical therapist included the following description: "Sexual Abuse of an Adult [victim of non-partner (rape)])." (*Id.* at 9) (brackets and parenthesis as the appear on the evaluation form)

Based on a review of Victim's mental health records, the Court concludes that Plaintiff has failed to show prejudice under *Strickland*. He has not demonstrated that there is a reasonable probability that the jury in his trial would have acquitted him of the charged offenses. The fact that a person has been diagnosed with mental illnesses is not an automatic or assumed basis on

which to impeach that person's credibility as a witness, especially in sexual assault cases.[9] Further, the fact that multiple treating psychological health personnel have noted Victim's history of sexual abuse, including what appear to be specific references to the events at issue in this case, suggest such evidence would not have been successfully used to impeach Victim's credibility. The Court denies his eighth ground for habeas relief.

## IX. Ground Nine

Petitioner's ninth and final ground for habeas relief claims his trial counsel was ineffective in failing to object to the admission of the box cutter as evidence. His counsel in the instant habeas proceeding argues the prosecution failed to adequately establish the chain of custody of the box cutter and that the probative value of admitting the box cutter was far outweighed by the prejudicial effect it had on the outcome of the case.

"Whether evidence was properly admitted is a question of state law reviewable on habeas only when a specific constitutional right is infringed 'or [the evidence] is so prejudicial that it amounts to a denial of due process.'" *Carter v. Armontrout*, 929 F.2d 1294, 1296 (8th Cir. 1991) (alteration in original) (quoting *Manning–El v. Wyrick*, 738 F.2d 321, 322 (8th Cir. 1984)). A petitioner must show more than error requiring reversal on direct appeal to obtain relief. He must show that the alleged error rendered the entire trial fundamentally unfair . . . ." *Id.*

---

[9] *See generally* Emily R. Dworkin, et al., *Sexual Assault Victimization and Psychopathology: A Review and Meta-Analysis* 3 (author manuscript, published in final edited form at 56 Clinical Psychol. Rev. 65 (Aug. 2017)) ("A qualitative review of the prevalence of various mental disorders in survivors of adult [sexual assault] found that 17%–65% of people with a history of [sexual assault] develop PTSD, 13%–51% meet diagnostic criteria for depression, 12–40% experience symptoms of anxiety, 13–49% develop alcohol use disorders, 28–61% develop drug use disorders, 23–44% experience suicidal ideation, and 2–19% attempt suicide. Although other psychological conditions have received less frequent attention in relation to [sexual assault], there is some evidence that [sexual assault] is associated with conditions such as obsessive-compulsive disorder and bipolar disorder.") (citations omitted).

Assuming *arguendo* there was insufficient evidence to establish a proper chain of custody for the box cutter, Petitioner has not shown that the admission of the box cutter resulted in an unfair trial. Numerous witnesses testified and were cross-examined about the existence of the box cutter and the role in which it was used in the charged conduct. In fact, Petitioner essentially admitted a box cutter was present during the events on August 16, 2008 in the subsequent procedural history of this case.[10] The Court finds that the possibility of ambiguities in the chain of custody between the time of the charged offenses and trial as outlined by Petitioner do not demonstrate he was denied a fair trial. Accordingly, the Court denies his ninth and final ground for habeas relief.

Accordingly,

**IT IS HEREBY ORDERED** that James Mueller's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (ECF No. 1) is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall substitute Bill Stange as the proper Respondent in this action.

---

[10] In affirming the motion court's denial of relief under Rule 29.15, the Missouri Court of Appeals noted:

> [Petitioner's] first allegation of ineffective assistance of counsel stems from his position that Trial Counsel should have moved to dismiss the four armed-criminal-action charges brought against him. [*Petitioner*] *maintains that Victim's testimony at trial clearly showed that* [*Petitioner*] *used a box-cutter knife during the initial act of oral sodomy against Victim, but that* [*Petitioner*] *dropped the knife and no longer used it during the subsequent offenses*. Thus, [Petitioner] argues that a reasonably competent attorney would have moved to dismiss the four armed-criminal-action charges relating to those subsequent offenses.

(Ex. J, ECF No. 9-10 at 9-10) (emphasis added) This claim was not raised in this instant federal habeas petition.

**IT IS FURTHER ORDERED** that Mueller has not made a substantial showing of a denial of a constitutional right and this Court will not issue a Certificate of Appealability. A separate Judgment in accord with this Memorandum and Order is entered on this same date.

Dated this <u>24th</u> day of March, 2020.

**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**